# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 4240 | **DATE** | 9/17/2001 |
| **CASE TITLE** | SMITH vs. ALLSTATE INS.CORP. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER: Defendants' Motion to Strike is granted. Defendants' Motion for Summary Judgment is granted and the Plaintiff's state claims of Tortuous Interference with Contract and Intentional Infliction of Emotional Distress is dismissed without prejudice. This case is hereby terminated. This is a final and appealable order.**

(11) ■ [For further detail see

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | number of notices | | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | SEP 18 2001 | | 33 |
| ✓ | Docketing to mail notices. | date docketed | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

FD 1 CD FOR DOCKETING
01 SEP 17 PM 5: 17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ARLINE WHITE SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 99 C 4240 |
| | ) | |
| ALLSTATE INSURANCE | ) | Judge Guzman |
| CORPORATION, d/b/a ALLSTATE | ) | |
| INSURANCE COMPANY; SAMUEL | ) | |
| TORNABENE, individually and as an agent of | ) | |
| ALLSTATE INSURANCE COMPANY; PAUL | ) | |
| HUBER, individually and as an agent of and as | ) | |
| an agent of ALLSTATE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

DOCKETED

SEP 1 8 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff, Arline White Smith (hereinafter "Smith" or "Plaintiff"), has sued her employer, Allstate Insurance Company (hereinafter "Allstate"), for retaliatory discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (hereinafter "Title VII") and intentional discrimination based on age under Age Discrimination Employment Act, 29 U.S.C. §§ 621-634(hereinafter "ADEA"). In addition to her federal claims, Smith also alleges intentional interference with her contractual rights and intentional infliction of emotional distress. Smith claims that her employer, Allstate, and two of its supervisors, Samuel Tornabene (hereinafter "Tornabene"), and Paul Huber (hereinafter "Huber"), retaliated against her for exercising her rights under Title VII, by denying her promotions on three occasions to the position of Frontline Performance Leader (hereinafter "FPL") in 1998. Before the Court are

1

Defendants' Motion for Summary Judgment on all claims, and Defendants' Motions to Strike portions of the Plaintiff's Rule 56.1(b)(3)(A) Response, portions of the Affidavit of the Plaintiff, portions of Plaintiff's Exhibits, portions of Plaintiff's Rule 56.1(b)(3)(B) Statement of Additional Facts. For the reasons provided in this Memorandum Opinion and Order, the Court grants Defendants' Motions to Strike, grants Defendants' Motion for Summary judgement on Plaintiff's claims of retaliation and age discrimination, and dismisses Plaintiff's state claims of tortuous interference of contract and intentional infliction of emotional distress, without prejudice.

## I.    FACTS[1]

Plaintiff, Arline White Smith is an African-American woman who has worked for Allstate since 1973. (Defs.' LR 56.1(a)(3) ¶¶ 1 (hereinafter "Defs.' ¶").)  Smith first alleged discrimination against Allstate in October 1996, based on the denial of promotions. (Defs.' ¶ 37.)  In Smith's first case, she alleged Allstate discriminated against her under Title VII when they failed to promote her on six separate occasions on the basis of race, sex, age and in retaliation for her filing charges with the Equal Employment Opportunity Commission ("EEOC"). *Arline White Smith v. Allstate Ins. Corp.*, 24 F.Supp.2d 870 (N.D.Il. 1998). (*Id.* ¶¶ 37, 38.).  District Court Judge Elaine Bucklo granted summary judgement in favor of the Defendant, which was affirmed by the Seventh Circuit. *Arline White Smith v. Allstate Ins. Corp.*,

---

[1]The following facts are either undisputed, admitted by Plaintiff and Defendant, or deemed admitted by Plaintiff because the Plaintiff's response in Plaintiff's LR 56.1(b)(3)(A) motion either 1) inappropriately denied the material fact by citing to an exhibit that agreed with the Defendants' statement of material facts, or 2) was unsupported by proper citation that specifically referred to the record, affidavits, or other supporting materials relied upon for disagreement, as required by Local Rule 56.1(b)(3)(A) and (B), which this Court strictly enforces.

202 F.3d 274 (7th Cir. 1999).[2]

During the time of this lawsuit, Smith was employed as an Evaluation Consultant (hereinafter "EC") in Allstate's Matteson, Illinois claims office. (*Id.* ¶ 1.) As an EC, Smith was generally responsible for evaluating and authorizing settlements of bodily injury claims. (*Id.* ¶ 2.) Each job title at Allstate is classified into a salary grade that reflects the ranking of the job within the company. (*Id.* ¶ 20.) In 1998, the EC position was a salary grade of 35 and the FPL position was a salary grade of 37. (*Id.*) In 1998, movement from the EC position to the FPL position was considered a promotion. (Defs.' ¶¶ 20, 21; Pl.'s Additional Facts ¶ 65 (hereinafter "Pl.'s ¶").) The FPL position demands direct management of other employees. (Pl.'s ¶ 67.)

Since 1996, Smith's supervisor has been Samuel Tornabene, Market Claim Manager (hereinafter "MCM") of the Matteson Claim Office. (Defs.' ¶¶ 3, 4.) Tornabene's supervisor is Paul Huber. Huber has been the Claim Service Manager (hereinafter "CSM") of the Midwest region since 1997. (*Id.* ¶¶ 5, 6.)

A Progress Development Summary is based in part on individual performance and is an employment evaluation process. (*Id.* ¶ 30.) Smith received good performance evaluations in 1996 and was given positive comments as an EC by her former direct supervisor, John Valaitis, until he retired 1999. (*Id.* ¶¶ 6, 9.) Smith also had been a manager for many years before becoming an EC and it is assumed that she did not loose her management skills. (*Id.* ¶ 73.) She was chosen to be an EC, which was a newly created position at the time, and was a key piece in the redesign of Allstate's claim process. (*Id.* ¶¶ 90, 91.) Tornabene gave her positive marks on

---

[2]Smith's other case is currently pending before District Court Judge Nolan and alleges that Allstate discriminated and retaliated against her for failing to promote her. *Arline White Smith v. Allstate Ins. Corp., et al.*, No. 99 C 0906.

her Progress Development Summary in 1997. (Pl.'s ¶ 32.)

In addition to an annual employee evaluation of performance, Allstate also conducts a process called succession planning. (Defs.' ¶12.) Allstate's philosophy of succession planning is to make sure diversity is used in succession planning, and that the merits of individuals' performances and individual abilities are considered. (Pl.'s ¶ 5.) The overall objective of succession planning is to identify and develop individuals for positions of higher responsibility and oversight to enable them to advance as well as to help the corporation advance. (Defs.' ¶ 8.) Successive planning meetings, which occur at least annually, designate candidates for promotion as Ready Now, Ready 1-2 years, Ready 3-5 years and Optimally Placed. (*Id.* ¶¶ 9, 10.) Generally, if an employee is optimally placed, he or she will not be considered for a promotion, but the optimally placed employee could move laterally. (Pl.'s ¶ 27.) An employee's success in their assigned position does not mean that an employee would be a fair manager or leader of people. (Defs.' ¶12.) The performance evaluation and succession planning are two different management processes. (*Id.*)

Huber testified that he determines the best candidate for a given opening through the succession planning process and through conversations with his MCM's to ascertain that employee's skills and that they match a particular opening. (*Id.* ¶ 27.) The CSM is the ultimate decision maker in determining whether to promote someone to the position of FPL. (*Id.* ¶¶ 27, 30.) Generally, there are no discussions by an employee and manager regarding the optimally placed designation. It is possible that a designation of a given employee would be changed and designation of optimally placed can be changed. (Pl.'s ¶ 15.) Tornabene, however, testified that he would not consider an employee for a promotion as long as that employee is optimally placed.

4

(*Id.* ¶ 25.)

In the latter part of 1996 or first part of 1997, Tornabene rated Smith optimally placed. In 1998 and 1999, Tornabene also rated Smith optimally placed. (Defs.' ¶ 13; Pl.'s ¶ 29.) Smith's chart of successive planning for 1998 and 1999 does not include any documentation or comments, although there is room for them. There is no reference of any conversations with anyone as to Smith's qualifications to be promoted. (Pl.'s ¶ 28.) Allstate has stated that the significant reasons for rating Smith as optimally placed was an incident that occurred in a small conference room in the Matteson claim office in which Allstate claims that Smith "loudly cursed certain Allstate upper level managers and processes in the presence of a visitor from Allstate's corporate headquarters or home office. (*Id.* ¶ 17.) Tornabene also testified that another reason why he concluded that Smith was not a leader was that she was antagonistic at meetings. (*Id.* ¶ 20.) Tornabene testified about an incident in which he clams that Joyce Maddox, another Allstate employee, told him that Smith made a negative comment to her in 1997 or 1998. (*Id.* ¶ 21.) Tornabene also recalled a meeting in Bolingbrook where some comments were made which were perceived as antagonistic. (*Id.* ¶ 23.) Huber also noted that Smith "struggles with change" regarding Smith's leadership skills. (*Id.* ¶ 84.) Huber also testified that he perceived Smith to be scowling at him and turning away from him at meetings. (Pl.'s ¶ 88.)

Smith sought to become a FPL in 1998, but three other employees were promoted to the FPL position. The three employees were Lorie Maiden, John Glendinning, and Peter Estrada. (Defs.' ¶¶ 17, 18, 19, 22.)

5

In July 1998[3], Lorie Maiden, an Allstate employee who is younger than Smith, was promoted to an open FPL position in the Joliet, Illinois office. (*Id.* ¶ 17.) Sheryl Thomas was employed by Allstate as the CSM for the Illiana region, which compromised the Indiana and southern portions of Illinois including Joliet, Illinois, when the FPL vacancy arose in the Joliet claims office. (*Id.* ¶¶ 29, 30.) As the CSM, Sheryl Thomas was the ultimate decision maker in filling the vacant FPL position in Joliet. (*Id.* ¶ 30.) In order to the fill position, Thomas asked Huber, the CSM for the Chicagoland area, to recommend suitable candidates. (*Id.*) Huber recommended Lorie Maiden, a claims adjuster in the Matteson, Illinois claims office, for the FPL position. (*Id.* ¶ 31.) While initially accepting the position, Maiden decided not to assume the FPL position, and her promotion was rescinded. (*Id.* ¶ 32.) Thus, Maiden never assumed the duties of the FPL in the Joliet office. (*Id.*)

At the time of her promotion, Lorie Maiden was not optimally placed. (Defs.' ¶ 23; Pl.'s ¶ 40.) Thomas did not consider any employees for the FPL position in Joliet who were rated optimally placed. (Defs.' ¶ 35.) As noted earlier, Smith was rated optimally placed at this time. (*Id.* ¶ 13.) Thomas did not consider Smith for the FPL position because she had not been recommended by Huber, who was the CMS for the region where Smith worked as an EC. (*Id.* ¶ 33.) Huber did not consider an Allstate employee who was optimally placed for the FPL position. (*Id.* ¶ 24.) Thomas noted that even if Smith had been recommended, she would not

---

[3]Although paragraphs 17 and 29 of the Defendants's Statement of Material Facts Rule in accordance with Local Rule 56.1(a)(3) cite the year in which Lorie Maiden was promoted to the position of FPL as 1998, the affidavit of Sheryl Thomas cites the year as 1997. (Defs.' LR 56.1(a)(3), Ex. 3.) Smith admitted that the year of the promotion of Lorie Maiden took place in July 1998. (Pl.'s Rule 56.1(B)(3)(A) ¶ 17.) Thus, the Court concludes that 1998 is the correct year of promotion and disregard the inconsistency in the Defendants' motion.

have be considered for the position because Smith was optimally placed. (*Id.* ¶ 34.)

In August 1998, John Glendinning, an Allstate employee who is younger than Smith, was promoted to an open FPL position. (*Id.* ¶ 18.) At the time of Glendinning's promotion to the FPL position, he was not optimally placed by successive planning. (*Id.* ¶ 23.) In September 1998, Peter Estrada, an Allstate employee who is younger than Smith, was promoted to an open FPL position. (*Id.* ¶19.) At the time of Estrada's promotion to the FPL position, he was not optimally placed by successive planning. (*Id.* ¶ 23.)

Defendants argue that the federal claims of retaliation and age discrimination set forth by the Plaintiff are not supported by the facts or inferences from the record and fail to establish *prima facie* cases. Furthermore, the Defendants assert that the Plaintiff's state claims of intentional interference with her contractual rights fails to establish the elements of the cause of action, and her claim of intentional infliction of emotional distress is preempted by state law. Plaintiff contends that the record establishes a *prima facie* case of retaliation and meets all the elements for her state claim of statutory intentional inference with her contract rights.[4]

## II.    PRELIMINARY MATTERS

Before ruling on the merits of the summary judgment motion, the arguments raised in the Defendants' memoranda of law and Plaintiff's memorandum of law regarding collateral estoppel must be addressed. Secondly, the Defendants' motions to strike must be addressed. Plaintiff has not filed a response to the Defendants' motions to strike.

## A.    Collateral Estoppel

---

[4]The Court notes that Plaintiff failed to brief her allegations of age discrimination and state claims of intentional infliction of emotional distress in Plaintiff's Memorandum of Law Opposing Summary Judgment.

In conjunction with many of their arguments, the Defendants assert the application of collateral estoppel, in regards to Smith's previous litigation against Defendant Allstate. *Arline White Smith v. Allstate Ins. Corp.*, 24 F.Supp.2d 870, *aff'd* 202 F.3d 274 (7th Cir. 1999). Collateral estoppel refers to a judgment's effect of foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action. *Havoco of America, Ltd. v. Freeman, Atkins & Coleman, Ltd.*, 58 F.3d 303, 308 (7th Cir. 1995); *Freeman United Coal Mining Co. v. Office of Worker's Compensation Program*, 20 F.3d 289, 294 (7th Cir. 1994). Collateral estoppel will apply if: 1) the issue sought to be precluded is the same as that involved in the prior action; 2) the issue was actually litigated; 3) the determination of the issue was essential to the final judgment; and 4) the party against whom estoppel is invoked was fully represented in the prior action. *Havoco*, 58 F.3d at 308; *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir. 1994). Collateral estoppel is an affirmative defense and, therefore, the burden is on the Defendant to establish these elements. *Id.*

Defendants argue that the basis of Tornabene's initial determination of Smith as optimally placed is the same in this case as it was in *Arline White Smith v. Allstate*, 24 F.Supp.2d. 870 *aff'd* 202 F.3d 274, 1999 WL 970264 (7th Cir. 1999). Defendants assert that in the former case and this case, Tornabene contended that he optimally placed Smith due to an incident in a conference room in the Matteson claim office in 1996, where Smith yelled profanities at other management. Accordingly, they assert that the Seventh Circuit fully considered the factual basis for the incident and found that the Defendants had an honest belief that Smith was appropriately placed. Furthermore, Defendants also assert that in this case and the former case, the management process of successive planning determined that an employee who is optimally placed would not be

recommended for promotion. According to Defendants, the Seventh Circuit considered the designation of optimal placement and successive planning extensively in the former case, and held there was no inconsistency between rating Plaintiff high on her performance evaluation and finding her optimally placed. Defendants assert that these issues were fully litigated in the earlier case and was necessary for the judgment. Moreover, Smith was fully represented by counsel in the prior litigation. Thus, Defendants conclude that Smith should be collaterally estopped from disputing that: 1) the incident to took place, 2) successive planning is not distinct from performance evaluations as a management process, and 3) employees will not be promoted if optimally placed.

     The Court concludes that collateral estoppel applies in this case. While it is clear the Smith is alleging denial of different promotions in 1988 in retaliation for her earlier allegations (which regarded six denials of promotions prior to 1998), the factual issues regarding her designation as optimally placed and the process of successive planning have collateral effect on this case. Tornabene's proffered reason for optimally placing Smith in the successive planning process was determinative of the Seventh Circuit's dismissal of her discrimination and retaliation claims. The Seventh Circuit clearly held that

> Walter Davis, a high level manager from Allstate's corporate headquarters, was working in a conference room at the Matteson office when Smith and two other employees, Collette Thomas and Carolyn Shannette, entered the room. Smith became upset, raised her voice, and loudly stated, "Fuck the company, Fuck Sheryl Thomas. I'm going to end up being a disgruntled postal worker." [The "Sheryl" Thomas in this vulgarity-laced tirade was [CSM of the office at the time.] Davis took this incident seriously and reported it to Matteson management. Details of the incident were relayed to Matteson's market claims manager (MCM), Sam Tornabene. Tornabene took statements of Collette Thomas and Shannette, who both confirmed Davis' version of events. Tornabene confronted Smith, who downplayed the incident and denied that her outburst had been problematic. He

9

concluded that the incident occurred as reported to him and considered it to reflect poorly on Smith's leadership abilities and support for company policies and personnel. He placed a memo detailing his findings in Smith's personnel file and sent a copy to senior management. As a result, Tornabene categorized Smith as "optimally placed," which meant he would not recommend her for promotion to a leadership position.

202 F.3d 274, 1999 WL 970264 **1 (7th Cir. 1999)

This was a factual conclusion in the former case. In this case, Tornabene again asserts the same proffered reason for optimally placing Smith in defense of her allegations of retaliation and age discrimination. The issues in the current case are the same as the former case: whether the employer honestly believed Smith engaged in that conduct as a basis for her optimal placement and her denial of the promotion. In the former case, the Seventh Circuit concluded that Smith failed to "offer evidence to warrant a trial of whether Allstate honestly believed that she engaged in the conduct" or that "the investigation of the incident was incomplete or unfair." *Arline White Smith*, 1999 WL 970264 at *2-4. In this case, the issues are the same: Smith must offer facts, as part of her *prima facie* case of retaliation and age discrimination, which raise a question of fact as to alleged retaliation or age animus. In accordance with the Seventh Circuit's decision, the Court will deem the incident to have taken place as a factual conclusion of the previous litigation under collateral estoppel.

Moreover, the Seventh Circuit also considered the designation of optimal placement and successive planning extensively in the former case, and deemed the two management processes "distinguishable." The Appellate Court held "it is not inconsistent for a performance review to be positive and a successive plan to be negative." *Arline White Smith*, 1999 WL 970264 at *4. "[S]uccession planning evaluates an employees suitability for future promotions; performance review measures an employee's performance in her current job." *Id.* In this case, Smith, again,

asserts that the two processes are not distinguishable and that the Defendant's are using the distinction as a pretext for retaliation and age discrimination. In accordance with the Seventh Circuit, the Court will deem performance reviews and successive planning as separate processes and that an employee who is optimally placed will not be recommended for a promotion. The Court concludes that both issues were fully litigated in Smith's former case and that Smith was fully represented at that hearing. Thus, Smith will be collaterally estopped from denying these factual issues.

## B.    Defendants' Motion to Strike Portions of the Affidavit of the Plaintiff (Plaintiff's Exhibit 3)

Affidavits must be made on personal knowledge and must contain statements that would be admissible as evidence in court. Fed. R. Civ. P. 56(e); *Joseph P. Caulfield & Assocs. Inc. v. Litho Prods., Inc.*, 155 F.3d 883, 888 (7th Cir. 1998); *Lee v. Wal-Mart Stores*, 78 F.3d 586, 1996 WL 102446 * 2 (7th Cir. 1996). Although "personal knowledge " may include inferences and opinion, those inferences must be sustained by specific facts. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988). Self-serving affidavits without factual support in the record are not sufficient. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Slowiak v. Land O'Lakes, Inc.*, 987 F.2d 1293, 1295 (7th Cir. 1993). Rule 56 requires more than bald assertions of the general matter asserted. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Affidavits must show affirmatively that the affiant is competent to testify to the matters stated therein and cite specific concrete facts establishing the existence of the truth of the matter asserted. Fed. R. Civ. P. 56(e); Fed. R. Evid. 602 (witness permitted to testify only to those matters about which he or she has personal knowledge). Thus, the following are not properly

11

included in an affidavit supporting or opposing summary judgment and should be disregarded: 1) conclusory allegations absent supporting evidence, *DeLoach v. Infinity Broad.*, 164 F.3d 398, 402 (7th Cir. 1999); *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998); 2) legal argument, *Pfeil v. Rogers*, 757 F.2d 850, 862 (7th Cir. 1985); 3) self-serving statements without factual support in the record, *Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); *Smith Bus. Admin. v. Torres*, 142 F.3d 962, 968 (7th Cir. 1998); 4) inferences or opinions not "grounded in observation or other first-hand experiences," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.3d 655, 659 (7th Cir. 1991); and 5) mere speculation or conjecture, *Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999). The Defendants object to certain statements in paragraphs: 6, 8,[5] 9, 10, 14, 15, 20, 21, 22, 23, 24, 26 and 28. Each of these objections will be addressed in turn.

Defendants claim that paragraph 6 is hearsay. In paragraph 6, Smith purports to be a witness to the deposition testimony of Al Zvinakis (former manager of Matteson office) and William Rathe (Human Resources Department manager) and attempts to recite their testimony from their depositions in her affidavit. The statement by William Rathe is not hearsay as it is an admission by a party opponent as defined in Rule 801(d)(2)(c) or (d). The statement by Al Zvinakis may also qualify as an admission if made while he was employed by Allstate. These statements are irrelevant, however, because the only promotions at issue in this case are the July,

---

[5]The Court notes that in the Defendants' Motion to Strike Portions of the Affidavit of Arline White Smith, the Defendants' purported to strike Paragraph 7, but in fact cited Paragraph 8 of Plaintiff's affidavit which stated "The move to Evaluation Consultant was a promotion for Mr. Brace." (Pl.'s LR 56.1(b)(3)(A), Ex. 3 ¶ 8.) Thus, the Court will address the Defendants' motion as an assertion to strike Paragraph 8 of Plaintiff's affidavit.

The Court also notes that "Mr. Brace" refers to Larry Brace, an employee of Allstate, whose promotion allegedly over Smith is part separate litigation in front of Judge Nolan: *Arline White Smith v. Allstate Insurance Corporation, et al.*, No. 99 C 0906.

August and September, 1998 promotions of Maiden, Glendinning and Estrada.

Defendants move to strike paragraph 8 and 9 because they claim the paragraphs lack proper foundation. Smith has sworn to have personal knowledge of her statement in paragraph of her affidavit. (Pl.'s LR 56.1(b)(3)(A), Ex. 3 ¶ 1.) And, the Court must view the facts on summary judgment in light most favorable to the Plaintiff. *See, e.g., Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997). However, the Court will not consider evidence regarding facts clearly not within the knowledge of the Plaintiff. Paragraph 8 is not hearsay. An employee for the length of time that Arline White was employed would be expected to know when a move within the company hierarchy is a promotion. Paragraph 9 fails to establish a foundation as to how Plaintiff knows the ratings of other workers. This is not something one would ordinarily be expected to have personal knowledge of and therefore, Paragraph 9 is stricken.

Defendants object to paragraph 10, alleging that the first sentence is hearsay and the second sentence is irrelevant and a self-serving conclusion. The first sentence of paragraph 10 will not be stricken. It can be fairly inferred that Plaintiff was informed of this fact by her supervisor in the company. The statement would, therefore, qualify as an admission. The second sentence, where Smith asserts that she is a "pioneer" is self-serving and irrelevant. (*Id.*) Paragraph 10 will be disregarded.

In paragraph 14, Smith fails to identify who "branded" her as being "resistant to change." The statement is conclusory and attempts to show evidence of retaliatory intent without properly offering a foundation. In accordance with Defendants' motion, paragraph 14 will be stricken.

In the last sentence of paragraph 15, Smith's states that she is " aware that Larry Brace never attended any of the workshops." Defendants assert that is lacks proper foundation because

Smith has to failed to demonstrate how she has personal knowledge of this fact. While the court recognizes that Smith may have some knowledge of Brace's attendance, it is unclear how she would know the certainty of his attendance and, therefore, it will be disregarded.

Defendants objects to paragraph 20 because they allege that the first sentence is hearsay. In the first sentence, Smith purports to relate the deposition testimony of Tornabene. If she was present and heard the testimony she may relate it as it is not hearsay under Rule 801(d)(2)(c) or (d). The motion to strike is denied.

The second and third sentences of paragraph 20 and first sentence of paragraph 21 involve an incident which took place at Allstate, where Smith acted inappropriately in the workplace. The Plaintiff in her affidavit denies that the event took place, while the Defendants assert that she cannot deny the existence of the event under the doctrine of collateral estoppel, citing to *Arline White Smith v. Allstate Insurance Corp.*, 24 F.Supp. 870, 877-878 (N.D.Ill. 1998), *aff'd* 202 F.3d 274 (7th Cir. 1999). In accordance with the Court's earlier conclusion, Smith is precluded from denying that this incident took place due to collateral estoppel, and these sentences will be stricken.

In the second and third sentences of paragraph 21, Smith attempts to testify to the testimony of Collette Thomas during her deposition. It is unclear whether Callette Thomas's statements would qualify as the Defendant's admissions. Therefore, the Defendants correctly assert that this is inadmissible hearsay. Paragraph 21 will be stricken.

Defendants move to disregard the last sentence of paragraph 22, alleging it is hearsay. Smith attempts to relay the statement of Joyce Maddox, another employee and offers it for its truth. Thus, it is also inadmissible hearsay and will be stricken.

14

In paragraphs 23 and 24, Smith asserts that she is "aware" that both Joyce Maddox and Shari Coles were demoted. Defendants argue that the statement lack proper foundation and is not relevant to any issue in the case. The Court agrees that the assertions lack proper foundation and will be disregarded. Similarly, upon Defendants' motion, the Court will strike paragraph 26 regarding the prior assignment of Carmen Buckles to FPL from a management position.

Defendants also object to the last sentence of paragraph 28, which reads "I am aware that Larry Brace, who did not attend the mandatory Evaluation Consultant workshop, and who resists using company-mandated Alternative Dispute Resolution, has not been accused by Tornabene of being resistant to change." Defendants argue that the statement lacks proper foundation as to how she had knowledge of Brace's attendance, his resistance to using the Alternative Dispute Resolution, or that Tornabene did not accuse Brace of being resistant to change. While the Court may agree that Smith has some knowledge generally as to these matters, Smith's assertion that Brace has not been labeled as being resistant to change is still inadmissable.    Thus, the last sentence of paragraph 28 is stricken.

## C.    Defendants' Motion to Strike Portions of the Plaintiff's Rule 56.1(b)(3)(A) Response

A district court has the power to strike a response to a motion for summary judgment when the non-moving party fails to comply with local rules regarding that response. LR 56.1[6];

---

[6]    Under Local Rule 56.1(B), the party opposing the motion for summary judgment is required to serve and file
    (1) any opposing affidavits and other materials referred to in Fed. R. Civ. P. 56(e);
    (2) a supporting memorandum of law; and
    (3) a concise response to the movant's statement shall contain:
        (A) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon, and

*Rosemary B. on behalf of Michael B. v. Bd. of Educ. of Community High School Dist. No. 155*, 52 F.3d 156, 158-59 (7th Cir. 1995). The Seventh Circuit has "repeatedly upheld the strict enforcement of these rules." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). While many of Plaintiff's Rule 56.1(B)(3)(A) responses are improperly supported, the Court will not disregard the Plaintiff's response in its entirety nor conclude admission of the Defendants' Statement of Material Facts in its entirety. The insufficiency of some responses is not dispositive.

As noted earlier, in summary judgment, the Court must construe the facts and inferences in favor of the non-moving party which is the Plaintiff. Nonetheless, where a party has not followed the local rules requiring response, supported by appropriate citations in the record, to each uncontested fact asserted in the moving party's statement of material fact, the moving party's facts remain uncontested. *See, e.g., Brasic v. Heimemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997); *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). Defendants object to Plaintiff's responses of material fact numbers: 2, 11, 12, 13, 14, 15, 16, 21, 22, 25, 27, 28, 29, 30, and 34. Plaintiff's answers that do not deny properly supported facts in Defendants' numbered paragraphs with citations to supporting evidence in the record constitute admissions. LR 56.1(b)(3)(A), (B); *Michas v. Health Cost Control s of Ill.*, 209 F.3d 687, 689 (7th Cir. 2000).

In reference to material facts 2, 11, 12, , 13, 14, 15, 16, 21, 22, 25, 28, and 34, the Court concludes that the Smith's supporting citation does not deny the Defendants' statements of fact

---

(B) a statement consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon. All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.

and, therefore, these facts will be deemed admitted by the Plaintiff. In reference to material facts

27, 29, and 30, Smith failed to cite to the record completely and, therefore, Defendants' statement

will also be deemed admitted.

**D.    Defendants' Motion to Strike Plaintiff's Exhibits attached to Plaintiff's Statement of Additional Facts**

Documents submitted in opposition to a motion for summary judgment must be properly

identified by affidavit or otherwise admissible into evidence. *See, e.g., Friedel v. City of*

*Madison*, 832 F.2d 965, 970 (7th Cir. 1987). Defendant argues that certain exhibits produced by

Plaintiff have not been properly authenticated pursuant to Federal Rule 56(e), and thus objects to

Exhibits 20, 21, 22, 23, 24, 25, 26, 27, 2, 29, and 30. The requirement for proper authentication

as a condition precedent to admissibility can be satisfied by evidence to support a finding that the

matter in question is what it purports to claim. Fed. R. Evid. 901. The Plaintiff's other exhibits

were properly identified during deposition testimony. The Court agrees that the exhibits in

question are not properly identified, and should be stricken.

**E.    Defendants' Motion to Strike Portion of Plaintiff's Rule 56.1(b)(3)(B) Statement of Additional Facts**

In accordance with Local General Rule 56.1, the court will not consider additional facts

submitted by the non-moving party that are not supported by appropriate citations to the record.

As noted earlier, any improperly supported additional facts will be disregarded. *Rosemary B. v.*

*Bd. of Educ. of Comm. High School Dist., No. 155*, 52 F.3d 156 (7th 1995). Defendants argue that

portions of the Plaintiff's Statement of Additional Facts should be stricken including: 18, 21, 25,

31, 36, 41, 43, 44, 45, 46, 50, 66, 78, 108, 109, 110, and 111.

Additional Fact 18 regarding the cursing incident at the Matteson office cannot be

considered due to collateral estoppel (see above) and, thus, this fact will be disregarded. The last sentence of Additional Fact 21, regarding the incident where Tornabene allegedly did not intervene on behalf of employee, will be disregarded because its cite was stricken above. The last sentence of Additional Fact 25 is not supported by any cite and will be stricken. In regards to Additional Fact 31, the Court cannot find any support for the cite attesting to the readiness for higher responsibility considerations Smith cited in Progress Development Summary and it will be stricken as well. Additional Fact 36 does not make sense as a sentence and will be stricken. There is no proper cite or admissible record to support Additional Fact 41. Additional Fact 43, regarding the promotion of Lori Maiden, is not supported by the cite and will be disregarded. The exhibits in support of Additional Fact 44 have been stricken and the other citation does not support the promotion of Estrada. Similarly, the exhibit supporting Additional Fact 45, have been stricken. Both Additional Facts 44 and 45 will be disregarded.

The first sentence in Additional Fact 47 notes Estrada's position at the time of promotion but the exhibits cited do not support the assertion and it will also be disregarded. Additional Fact 50 regarding Glendinning and Maiden should be stricken because the exhibits Plaintiff cites as support were not properly authenticated. Additional Fact 66, regarding Brace's promotion, is not supported by the cite and will be stricken. The Court will strike Additional Fact 78 regarding Joyce Yattoni (an Allstate employee) because it is not supported by the cited record. Additional Fact 108 regarding James LaBranco (an EC at Allstate) is not only not supported by the cite but is irrelevant and will be disregarded. The Court will disregard as well Additional Fact 109 regarding an incomplete successful planning form because it is not supported. Additional Facts 110 and 111 are irrelevant and will be stricken.

18

# III.    DISCUSSION

According to Federal Rule of Civil Procedure 56(b) ("Rule 56"), the Court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party of summary judgment has the initial burden of showing that no issue of material fact exists in the case. Pursuant to Rule 56, when a properly supported motion for summary judgment is made, the nonmovant must set forth specific facts showing there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 250. Accordingly, the nonmovant must go beyond the pleadings and support his contentions with proper documentary evidence, and, thus, may not rest on mere allegations in the pleadings or upon conclusory statements in affidavits. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). This standard is applied with added rigor in employment discrimination cases, in which intent and credibility are crucial issues. *Drake v. Minn. Min. & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir. 1998); *Courtney v. Biosound, Inc.*, 42 F.3d 414, 418 (7th Cir. 1994). The Court does not weigh the evidence or determine the truth of matter asserted when considering the submissions of the parties. *Anderson*, 477 U.S. at 249. The Court "must view the facts, and all reasonable inferences drawn therefrom, in a light most favorable to the nonmoving party." *Baron v. City of Highland Park*, 195 F.3d 333, 337 (7th Cir. 1999). Summary judgment

must be granted to the moving party unless a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 249.

Smith alleges the federal claims of retaliation and age discrimination, and state claims of tortuous interference with her contract and intentional infliction of emotional distress.

## A.    Retaliation

Title VII prohibits an employer from "discriminat[ing] against any of his employees ...because he has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).  To establish a *prima facie* case of retaliation, a Plaintiff must demonstrate: 1) that she engaged in a statutorily protected expression; 2) that she suffered an adverse action by his employer; and 3) that there was a casual link between the protected expression and the adverse action. *Drake*, 134 F.3d at 885; *McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997).  If the Plaintiff is able to establish a *prima facie* case of retaliation, the burden of production shifts to the Defendant to articulate a nondiscriminatory reasons for denying Smith three separate promotions. *McClendon*, 208 F.3d at 796.

The Defendants[7] concede that Smith can satisfy the first two steps of a *prima facie* case. Smith filed charges with the EEOC and a complaint with the federal district court and thus she engaged in protected activity. *See, e.g., Payne v. Milwaukee County,* 146 F.3d 430, 434 (7th Cir. 1998) (filing a charge of discrimination with the EEOC is a protected activity).  Smith also suffered adverse action when she was denied three separate promotions to the position of FPL.

---

[7]The Court notes that the Defendants assert that Huber and Tornabene cannot be personally liable in this case under Title VII due to Seventh Circuit precedent. *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999);  *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 493 (7th Cir. 1998).  The Court declines to address this issue due to the grant of summary judgment in the Defendants' favor.

*See, e.g., Reed v. Shepard*, 939 F.2d 484, 492 (7th Cir. 1991) (adverse action must be job-related to establish retaliation). However, the Defendants argue that there is no casual connection between Smith's filing her first lawsuit against Allstate and the denial of promotions.

Under the third step of a *prima facie* case of retaliation, the Plaintiff has the burden of demonstrating that but for her protected expression, the Defendants would not have taken adverse action. *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 483 (7th Cir. 1996). In determining if there is causal link, the obvious place to start is the temporal sequence between the protected expression and the adverse employment actions. *Sweeney v. West*, 149 F.3d 550, 444 (7th Cir. 1998). An adverse action that follows on the heals of the protected activity satisfies the link. *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994); *Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307, 1315 (7th Cir. 1989). Adverse employment action that occurred many months after the protected activity has taken place does not sufficiently meet the causation requirement. *Jasmantas v. Suabru-Isuzu Automotive, Inc.*, 139 F.3d 1155, 1157 (7th Cir. 1998).

Smith argues that Defendants' adverse action simultaneously coincided with her protected activity. According to Plaintiff's Memorandum of Law, Smith filed her first lawsuit in 1996 and that suit was actively litigated until summer 1998. (Pl.'s Mem. of Law Opp'n to Summ. J. Mot. at 3.) The three denied promotions in question in this case took place between February 1998 and September 1998. (*Id.* at 4.) Smith contends that due to the ongoing litigation, her protected activity was on-going and the promotions in question are in close proximity or "simultaneous" with her protected activity of filing the suit and taking her suit against Allstate forward.

The Court, however, does not view the two year time period from the start of her prior law suit to its completion as an open time period of a "protected activity." Smith cannot maintain the

temporal connection throughout the litigation. The substantial amount of time between her initial filing of a discrimination suit and the three denials in promotions are "counter-evidence of causal connection." *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995). Smith offers that Tornabene and Huber were part of the former suit during the promotions in 1998 and this influenced their placement of her as optimally placed in succession planning. Smith must offer more to raise an inference of fact especially in light of the circumstance that the optimally placed designation was already in place. Affirmative causal link cannot be presumed but must be proven in its own right. *Hamann v. Gates Chevrolet*, 910 F.2d 1417, 1420 (7th Cir. 1990). Smith has not raised an issue of fact that but for her protected activity in 1996, the Defendants would not have failed to promote her on 3 occasions in 1998. Therefore, Smith has failed to satisfy her *prime facie* case of retaliation and Defendant's motion for summary judgment is granted as to Plaintiff's retaliation count.

**B.    Age Discrimination**

Under the Age Discrimination Act ("ADEA") it is unlawful "to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). A Plaintiff has two ways in which to make a *prima facie* case of age discrimination. She can either present direct evidence that age was a determining factor in the failure to promote or she can present indirect evidence to demonstrate that the employment decision "was motivated by the employer's discriminatory animus." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). In absence of direct evidence of age discrimination, a Plaintiff can establish age discrimination through the familiar *McDonnell Douglas* burden-shifting method of proof. *Beatty v. Wood*, 204 F.3d 713, 716, 717 (7th Cir.

2000). Smith has not offered any direct evidence of age discrimination, and therefore, her discrimination claim is analyzed under the *McDonnell Douglas* framework.

In order to establish a *prima facie* case under *McDonnell-Douglas*, the Plaintiff must prove: 1) that she belongs to a protected class; 2) that she applied and was qualified for a particular position; 3) that she was not offered the position; and 4) that similarly situated, substantially younger employees were treated more favorably. *Pitasi v. Gartner Group, Inc.*, 184 F.3d 709, 716 (7th Cir. 1999). After a Plaintiff proves a *prima facie* case, the burden shifts to the Defendant employer to offer a legitimate nondiscriminatory reason for its employment action against the Plaintiff. If the employer discharges this burden, then the Plaintiff must demonstrate that the proffered reason is a pretext for unlawful discrimination. *Beatty*, 204 F.3d at 716. During summary judgment, the trier of fact may infer from a pretext that the real reason for the employment decision was unlawful discrimination. *See, e.g., Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 984 (7th Cir. 1999). A Plaintiff who can prove pretext can defeat a motion for summary judgment. *Id.* Defendants contend that Smith cannot demonstrate a *prima facie* case of age discrimination, and even if she could, it had legitimate nondiscriminatory reasons for not promoting her on three separate occasions to the FPL position. While the Defendants concede that Smith meets steps one and three of the *prima facie* test, the Defendants argue that Smith is unable to demonstrate the second and fourth steps of a *prima facie* case. Defendants assert that Smith is unable to show that she was qualified for the position (step two) nor that younger, similarly situated employees were treated more favorably than she was by the Defendants (step four).

First, Defendants assert that Smith was not qualified for the position of FPL because she

was optimally placed. As an optimally placed employee, Smith was not eligible for promotion. Secondly, Defendants note that Smith cannot demonstrate that persons outside of the protected class were treated more favorable than she was by Defendants because Maiden, Glendinning and Estrada were not optimally placed at the time of their respective promotions. Moreover, Defendants contend that no optimally placed employee was considered for the positions.

As the Court noted earlier, the Plaintiff did not brief her age discrimination claim in Plaintiff's Memorandum of Law in Opposition to Summary Judgment. The Court has an obligation to view all facts in the light most favorable to the non-moving party. However, even if Court were to attempt to infer an argument supporting denial of summary judgment, this inference could not save Smith's age discrimination case. First, Smith has not presented any evidence that demonstrates that in fact she was qualified for the FPL position. It is undisputed that was optimally placed during the time of all three promotions and was not considered for the positions. She has not offered any evidence that demonstrates eligibility for those positions nor has she raised a question of fact that such placement was motivated by age animus.

Smith attempts to undermine the credibility of Tornabene and Huber by attacking their determination of her as "optimally placed." She offers that both Tornabene were part of the former suit at time of the 1998 promotions which influenced her placement as optimally placed. She asserts that their inconsistencies about the exact time of incident in 1996, the vagueness of the Defendants' description of the event and the unlikeliness of the continued influence of the incident on her placement as optimal is sufficient to raise a question of fact. Smith attempts to undermine the Defendants reasons for optimally placing her by highlighting the Defendants inability to remember specific details as to their belief that she is not a leader. She further

disputes Defendants' conclusions that she has no leadership skills by pointing to her past management positions and excellent performance reviews. Smith further offers other situations where she believes that the Defendants inconsistently promoted other employees.

None of these factual assertions sufficiently dispute the Defendants designation of Plaintiff as being optimally placed. Smith's efforts to demonstrate that there is no basis for their current determination of her as optimally placed does not attack whether Allstate honestly believed that Plaintiff engaged in conduct that Defendants affirm is the basis for her optimal placement. Even Tornabene's recognition of the possibility of an employee who is optimally placed to be promoted, does not demonstrate that Smith was qualified for the position. Whether Defendants decision to optimally place Smith was right is not relevant because "[e]mployers may act for many reasons, good or bad ... unless they act for a forbidden reasons, these errors (more properly differences in assessments) do not matter." *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996). The Seventh Circuit has consistently held that the court must avoid stepping into the role of super personnel manager and must not second guess legitimate business decisions. *Aviles v. Cornell Forge Co.*, 183 F.3d 598, 604 (7th Cir. 1999); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *but cf. Kralman v. Ill. Dep't of Veterans' Affairs*, 23 F.3d 150, 157 (7th Cir. 1994) (employer is entitled to make mistake or exercise poor judgment so long as it honestly believes in reason offered for making decision). Smith fails to offer any evidence to dispute Defendants honest belief that she is not eligible to be promoted because she is optimally placed, and, therefore, Smith cannot satisfy the second element of her *prima facie* case.

Moreover, Smith does not state the ages of persons who received the promotions to the FPL in question, in order to demonstrate "substantial difference" in age to raise the presumption

of age discrimination. *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997). Thus, Smith failed to satisfy the fourth element of a *prima facie* case.

Accordingly, the Court grants summary judgement in favor of the Defendants regarding Plaintiff's age discrimination claim.

## C.   State Claims: Tortuous Interference with Her Contract and Intentional Infliction of Emotional Distress

According to supplemental jurisdictional statute, a district court may decline to exercise supplementary jurisdiction over pendent state law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367 (c)(3); *Contreras v. Suncast Corp.*, 237 F.3d 757, 766 (7th Cir. 2001); *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1250 (7th Cir. 1994). The Seventh Circuit has state that "the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright*, 29 F.3d at 1251. In unusual cases, the balance of factors to be considered under the pendent jurisdiction doctrine-- judicial economy, convenience, fairness, and comity — will point to federal decision of the state-law claims on the merits. *See, e.g., Duckworth v. Frazen*, 780 F.2d 645, 656 (7th Cir. 1985). However, "[p]endent jurisdiction is a power which the district court in the exercise of sound discretion, may choose to grant; it is not the Plaintiff's right." *Landstrom v. Ill. Dep't of Children and Family Serv.*, 892 F.2d 670, 679 (7th Cir. 1990).

Plaintiff's tortuous interference of contract and intentional infliction of emotion distress are state law claims. The Court's jurisdiction of these claims is based on federal jurisdiction over

26

the claims of retaliation and age discrimination. However, the Court has granted summary judgment in favor of the Defendants and, therefore declines to exercise jurisdiction over such claims. There claims are dismissed without prejudice.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' Motion to Strike be granted, (#24-1, 24-2, 25-1, 25-2) Defendants' Motion for Summary Judgement be granted, (#11-1) and the Plaintiff's state claims of Tortuous Interference with Contract and Intentional Infliction of Emotion Distress be dismissed without prejudice. This case is hereby terminated. This is a final and appealable order.

**SO ORDERED** 9/17/01

ENTER:

HON. RONALD A. GUZMAN
**United States Judge**